UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

CARLA GERAMI, ET AL.                          CIVIL ACTION NO.  3:19-CV-0618

VERSUS                                        JUDGE TERRY A. DOUGHTY

LANDON DUPUIS, ET AL.                         MAG. JUDGE PATRICK J. HANNA

<u>RULING</u>

This is a lawsuit arising out of a motor vehicle accident.  Pending before the Court is a

Motion for Partial Summary Judgment [Doc. No. 25] filed by Plaintiffs Carla Gerami and Gerald

Gerami.  The motion is unopposed.

For the following reasons, the Motion for Partial Summary Judgment is GRANTED.

I.      FACTS

During the early morning hours of February 13, 2018, Plaintiffs were passengers in a

small Ford Fusion vehicle driven by Chase Chapman ("Chapman"), an Uber driver (the "Uber

vehicle").  Plaintiffs were being driven from the Bonaparte Mardi Gras Ball at the Cajundome

Complex to their home in Lafayette, Louisiana.  The Uber vehicle was traveling on Congress

Street near its intersection with Ambassador Caffery Parkway.  Chapman maneuvered the Uber

vehicle into one of the two left turn lanes on Congress Street in order to turn left onto

Ambassador Caffery Parkway to bring Plaintiffs to their home.  Mr. Gerami was sitting in the

front passenger side seat, and Mrs. Gerami was sitting in the rear passenger side seat.

At that time, Defendant Landon Dupuis ("Dupuis") was driving his parents' F-250 Super

Cab pickup truck in the same direction on Congress Street with his parents' permission.  Landon

Dupuis was driving his parents from the Bonaparte Mardi Gras Ball to their home.  However,

Dupuis' mother had left her purse at the ball.  Dupuis suddenly and without warning made an illegal U-turn on Congress Street to return to the Ball.  Dupuis failed to see the Uber vehicle as he attempted to make the illegal U-turn.  The Dupuis vehicle then struck the rear passenger side door of the Uber vehicle, where Mrs. Gerami was sitting.

As a result of the accident ("the Subject Accident"), Mrs. Gerami sustained personal injuries, which Plaintiffs allege to include, a closed head injury, injuries to her neck, shoulder, and other parts of her body, and resulting post-traumatic headaches and other cognitive problems.[1]

At his deposition, Dupuis accepted full responsibility for causing the Subject Accident. Dupuis testified:

Q.      As we sit here today, do you know of any facts to suggest that the other driver did anything wrong to cause this accident?

A.      No, sir.

Q.      Do you accept full responsibility for the accident?

A.      Yes, sir.

[Doc. No. 25-3, Landon Dupuis Deposition, p. 36].

Dupuis had $50,000.00 in liability coverage from Defendant United Services Automobile Association ("USAA"), and USAA has paid and exhausted its policy limits.

Defendant James River Insurance Company ("James River") issued a policy of insurance bearing policy number CA436100LA.  Under the terms of the James River policy, James River provided $1,000,000.00 in uninsured/underinsured motorists coverage (hereinafter "UM coverage").

---

[1]As the Court addresses only liability in this Ruling, all damages, including Mrs. Gerami's physical and mental injuries, remain to be proven at trial.

Plaintiffs are insureds under the UM coverage provided by James River.

James River provides $1,000,000.00 in UM coverage to Plaintiffs for the Subject Accident for damages exceeding $50,000.00.

On January 10, 2019, Plaintiffs brought suit against Dupuis; his parents, Troy and Janese Dupuis; and USAA in the Fifteenth Judicial District Court for the Parish of Lafayette, Civil Action No. 2019-90194, Division "J."  On March 27, 2019, Plaintiffs added James River as a Defendant in their First Supplemental and Amending Petition for Damages.

On May 6, 2019, Plaintiffs moved to dismiss all claims against the Defendants other than James River.  These Defendants were dismissed by the State Court the same day.

James River then removed to this Court.

On March 30, 2020, Plaintiffs filed the instant motion.  James River's response was due April 20, 2020.  No response was filed.

The motion is now ripe.

## II.    LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment "shall [be] grant[ed] . . .  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.*

If a party opposing a summary judgment cannot "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, the entry of summary judgment is appropriate." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party opposing a motion for summary judgment may not simply rest upon mere allegations or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256; *see also* FED. R. CIV. P. 56(e). Thus, if a party fails to properly address another party's assertion of fact as required by FED. R. CIV. P. 56 (c), the Court may " consider the fact undisputed for purposes of the motion" and may also "grant summary judgment if the motion and supporting  materials –including the facts considered undisputed – shows that the movant is entitled to it."  FED. R. CIV. P. 56(e)(2)-(3).

### B.  Partial Summary Judgment

This is a diversity action, so the Court must apply Louisiana substantive law.  *See Erie R. Co. v. Thompkins*, 304 U.S. 64, (1938).

### 1.  Comparative Fault

First, Plaintiffs argue that they are entitled to summary judgment on the issue of Dupuis' liability.

Under Louisiana law "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LA. CIV. CODE art. 2315. Additionally, Louisiana has adopted a comparative fault scheme.  Louisiana Civil Code Article 2323 specifically provides, in pertinent part, that "[i]n any action for damages where a person suffers injury, death,

or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined."

"Ordinarily, the determination of whether negligence exists in a particular case is a question of fact; therefore, cases involving a question of negligence ordinarily are not appropriate for summary judgment. This principle extends to a question of comparative fault as well." *Pruitt v. Nale*, 45,483 (La. App. 2 Cir. 8/11/10), 46 So.3d 780, 783; *cf. Rance v. Harrison Co., Inc.,* 31,503 (La. App. 2 Cir. 1/20/99), 737 So.2d 806, 810 ("Where reasonable minds cannot differ, the question of contributory or comparative negligence is a question of law that may be resolved by summary judgment.").

In other words, "a partial summary judgment may not be granted for purposes of determining a particular element of liability such as . . . the fault of one party where such a determination is not completely dispositive of the question of liability between the parties concerning that claim and where . . . comparative fault remain[s] unresolved." *Williams v. City of New Orleans*, 637 So.2d 1130, 1132 (La. Ct. App. 1994); *see also Saba v. Hosp. Housekeeping Sys., Ltd*., 2007–0916 (La. App. 1 Cir. 12/21/07) ("The issues of one party's liability and comparative fault are so intertwined that a ruling on the first may, or at the very least appear to, unduly influence the second, and thus, impermissibly taint the allocation of fault.").

In this case, Dupuis admitted in his deposition that he is solely responsible for the Subject Accident.  James River has not presented evidence to challenge that admission or otherwise raise a genuine issue of material fact for trial on liability.  Accordingly, Plaintiffs are entitled to partial summary judgment on liability and a finding that Dupuis is 100% liable for the Subject Accident.

### 2.   Liability Coverage from USAA

Next, Plaintiffs assert that they are entitled to a determination that USAA provided liability coverage to Dupuis and that the policy limits have been paid.  Plaintiffs are also entitled to this finding.

They have also presented undisputed evidence that the Dupuis vehicle was insured by USAA under an insurance policy, and USAA tendered its full policy limits of $50,000.00 to Plaintiffs.  As reflected in the Affidavits of Dupuis and his father, Troy Dupuis, *see* [Doc. Nos. 25-7 & 25-8], the Dupuis vehicle was not covered by any other policy of insurance on the date of the Subject Accident.  Further, as reflected in the affidavit of Mr. Gerami, [Doc. No. 25-4], USAA tendered $50,000.00, which represented USAA's policy limits.  James River also acknowledged in its Supplemental Answer to Interrogatory No. 4, [Doc. No. 25-9], that it knows of no other coverage that would apply before the James River policy.  Therefore, Plaintiffs are entitled to partial summary judgment declaring that USAA provided liability insurance coverage on the Dupuis vehicle, and that it exhausted its policy limits by paying policy limits to Plaintiffs in the amount of $50,000.00.

### 3.   The James River Policy and Plaintiffs' Insured Status

Finally, Plaintiffs seek a declaration that the James River policy provides UM coverage to them in the amount of $1,000,000.00.

Under Louisiana law,

[Insurance contracts] should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.

An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.

If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

*Huggins v. Gerry Lane Enterprises, Inc*., 2006–2816 (La. 5/22/07); 957 So.2d 127, 128–29.

Plaintiffs present undisputed evidence that James River issued policy number CA436100LA, [Doc. No. 25-9], to the named insureds, including Raiser LLC and other entities. Plaintiffs present further undisputed evidence that this policy provided coverage for the Uber vehicle in which they were passengers.  James River admitted that its policy contained "an endorsement for Louisiana Uninsured Motorists Coverage."  [Doc. No. 25-5].

Under the Louisiana Uninsured Motorists Coverage endorsement, James River provided UM coverage to anyone "occupying" the Uber vehicle.  The term "occupying" is defined in the James River policy as:

F.  Additional Definitions

As used in this endorsement:

•    •    •

2. "Occupying" means in, upon, getting in, on, out or off.

[Doc. No. 25-9].  As reflected in the Affidavit of Mr. Gerami, Plaintiffs were "in" the Uber vehicle at the time of the Subject Accident, and therefore, are insureds under the policy. [Doc. No. 25- James River further admitted in Supplemental Response to Request for Admission No. 9 that Plaintiffs were "'occupying' a 'covered auto,' as those terms are defined in the James River Policy, at the time of the accident at issue." [Doc. No. 25-5]; *see also* [Doc. No. 25-9].

Moreover, as reflected in James River's Supplemental Response to Request for Admission No. 7, James River "admits that, at the time of the accident at issue, plaintiffs were insureds as defined in the James River Policy . . . ."  [Doc. No. 25-5].  James River further admitted in Supplemental Response to Request for Admission No. 10 "that plaintiffs are 'insureds,' as defined in the James River Policy . . . ."  [Doc. No. 25-5].

In its Supplemental Response to Request for Admission No. 11, [Doc. No. 25-5], "James River admits that the James River Policy at issue has a combined single aggregate limit of $1,000,000.00 for uninsured/underinsured motorists and liability coverage."  Under the declarations page of the James River policy, the policy noted that it provides $1,000,000.00 in UM coverage "for any one accident or loss."  Under the "Louisiana Uninsured Motorists Coverage - Bodily Injury" endorsement of the James River policy, the limit of insurance is $1,000,000.00 for "each 'accident.'" [Doc. No. 25-9].

Based upon James' Rivers admissions and discovery responses and the undisputed evidence, including that contained in Mr. Gerami's affidavit, the Court finds that Plaintiffs are also entitled to partial summary judgment declaring that James River provides UM coverage to Plaintiffs, that Plaintiffs are insureds under the James River policy, including for UM coverage, and that James River provides $1,000,000.00 in UM coverage for the Subject Accident.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment [Doc. No.

25] is GRANTED.  The following determinations are rendered as a matter of law:

(1)    Dupuis is determined to be 100% liable for the Subject Accident;

(2)    Dupuis had $50,000.00 in liability coverage from USAA;

(3)    USAA has paid the policy limits of $50,000.00 to Plaintiffs;

(4)    James River provides $1,000,000.00 in UM coverage for the Subject
         Accident; and

(5)    Plaintiffs are insured under the UM coverage provided by James River.

The issues of causation, damages, and bad faith remain pending for trial at this time.

MONROE, LOUISIANA, this 21st day of April, 2020.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE